UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| RANDELL CURTIS GOINS, | ) | |
| Plaintiff, | ) ) ) | Civil No. 5:16-cv-00460-GFVT |
| V. | ) ) | |
| NANCY A. BERRYHILL, Acting Commissioner Of Social Security, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Randell Curtis Goins seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied his claim for supplemental security income and disability insurance benefits. Mr. Goins brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Goins's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

**A**

Plaintiff Randell Curtis Joins initially filed an application for Title II disability insurance benefits and Title XVI supplemental social security on August 18, 2012, alleging disability beginning on November 30, 2011, in both claims. [Transcript (hereinafter, "Tr.") 112.] Goins's claims were initially denied by an Administrative Law Judge on December 3, 2012, and then denied again upon reconsideration on January 25, 2013. *Id.* Subsequently, the ALJ conducted a hearing with Goins on October 30, 2013. *Id.* On January 8, 2014, the ALJ rendered an

unfavorable decision denying both of Mr. Goins's claims for benefits. *Id.* at 126. However, the record indicates that Mr. Goins did not pursue this decision any further.[1] *Id.* at 18. Instead, Mr. Goins filed a new application for Title II disability insurance benefits and Title XVI supplemental social security on May 7, 2014, alleging disability beginning on January 9, 2014 in both claims. *Id.* Goins's new claims were initially denied by an Administrative Law Judge on September 3, 2014, and then denied again upon reconsideration on September 12, 2014. *Id.* Subsequently, the ALJ conducted a hearing with Goins and counsel, and the ALJ issued a final decision ultimately denying both of Goins's claims for benefits on November 13, 2015. *Id.* Mr. Goins filed a Request for Review of Decision Order on November 27, 2015, and the case was remanded to the ALJ. *Id.* Upon remand, the ALJ found Mr. Goins was not disabled prior to November 2, 2015, but became disabled on November 2, 2015, and his condition was expected to last for twelve continuous months. *Id.* at 19. The ALJ determined Mr. Goins had not become disabled on January 9, 2014, but had become disabled upon a change in his age category on November 2, 2015. *Id.* at 18–19, 30–31.

To evaluate a claim of disability for both Title II disability insurance benefit claims and Title XVI supplemental security income claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[2] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment

---

[1] Pursuant to *Drummond v. Comm'r of Soc. Sec.*, a subsequent ALJ is bound by findings of a previous ALJ unless the claimant produces new and material evidence related to that finding. 216 F.3d 837, 842 (6th Cir. 1997). Here, the ALJ determined the evidence did demonstrate a material change in Mr. Goins's condition, and therefore, *Drummond* did not apply. [Tr. 18.]

[2] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

2

or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Goins met the insured status requirements of the Social Security Act through September 30, 2016. Tr. 19, 21; *see also* 20

C.F.R. § 404.131. Then at step one, ALJ Isaacs found Mr. Goins had not engaged in substantial gainful activity since the alleged disability onset date, January 9, 2014. Tr. 21. At step two, the ALJ found Mr. Goins to suffer from the following severe impairments: other arthopathy in the right shoulder with mild degenerative joint disease, degenerative disk disease of the cervical spine with radiculopathy, mild intellectual disability/borderline intellectual functioning, anxiety, and depression. *Id.* at 21–22. At step three, the ALJ determined his combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. *Id.* at 22. Before moving on to step four, the ALJ considered the record and determined that Mr. Goins possessed the following residual functioning capacity:

> Mr. Goins has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can no more than occasionally flex or rotate his neck; no more than occasionally reach overhead bilaterally; no more than occasionally push and pull using his dominant right upper extremity; cannot climb robes, ladders and scaffolds; can no more than occasionally crawl; he has a marginal education and can only carry out simple, routine tasks (learned in less than 30 days) and learned through short demonstration or oral instruction when learning new tasks; and no more than occasionally tolerate changes in the workplace setting.

*Id.* at 24–25. After explaining his RFC, the ALJ found at step four that, based on this RFC, his age, education, and work experience, there are several jobs in the national economy that Mr. Goins could have performed prior to November 2, 2015. *Id.* at 30. Accordingly, the ALJ found at step five that Mr. Goins was not disabled prior to November 2, 2015, pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). *Id.* However, the ALJ also found, on November 2, 2015, when Mr. Goins's age category changed, he became disabled, and his condition was expected to last for twelve continuous months. *Id.* at 30–31.

Following the partially favorable decision, Mr. Goins timely appealed to the Appeals Council. However, the Appeals Council denied review on October 26, 2016, and Mr. Goins now seeks judicial review in this Court. [R. 17-2 at 2.] He specifically appeals the determination that

4

he was not disabled beginning January 9, 2014.

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Mr. Goins presents two arguments to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, he argues: (1) the ALJ's finding that Mr. Goins's intellectual disability does not meet or equal Listing 12.05 was not supported by substantial evidence; and (2) the ALJ erred by failing to analyze the opinion evidence in accordance with the regulations, Agency policy, and Sixth Circuit precedent. [R. 17-2 at 1.] For the reasons set forth below, Mr. Goins's arguments do not warrant a reversal of the ALJ's determination.

### A

First, Mr. Goins argues that the ALJ's determination on his intellectual disability was not supported by substantial evidence. In particular, Mr. Goins argues that his IQ scores meet the requirement of the Listing 12.05. At Step 3 of the sequential evaluation process, the claimant has the burden of showing that his impairments are equal or equivalent to a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). Because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary," the evidentiary standards for determining disability by meeting the listed impairments are stricter than the standards employed at later steps in the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see* 20 C.F.R. §§ 404.1526, 416.926. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. at 530 (emphasis in original); *see also Malone*, 507 F. App'x at 472 (quoting *Zebley*, 493 U.S. at 530).

A claimant only meets Listing 12.05 if his impairment "satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria" in Paragraphs

A though D. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (emphasis added). Thus, in order to satisfy the requirements of Listing 12.05 for Intellectual Disability, a claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22"; and the claimant must also show one of the sets of criteria in Paragraphs A, B, C, or D. *Id.* §12.05. "In other words, to demonstrate mental retardation, a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009). In addition, the criteria in Paragraph B of 12.05, which Goins claims he meets, requires "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05(B).

Here, the psychological examination conducted by Jennifer L. Wilke-Deaton, M.A. concluded that Mr. Goins's full scale IQ was 45. [Tr. 587.] Importantly, however, he fails to meet the requirement of showing that his intellectual deficits initially manifested prior to age twenty-two, which, as explained above, is a threshold requirement of Listing 12.05 that must be satisfied before consideration of any criteria in Paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05. Mr. Goins only asserts that his IQ is "presumed" not to have changed during his lifetime and outlines his history of special education. [R. 17-2 at 6–8.] However, the Sixth Circuit has rejected Mr. Goins's claim that his IQ examination at age 52 would provide evidence of his IQ prior to age 22. *Joyce v. Comm'r of Soc. Sec.*, 662 Fed. App'x 430, 434 (6th Cir. 2016) (holding that plaintiff's IQ examination at age 28 was not suffiencient evidence of a condition that arose prior to age 22). Furthermore, early departure from school and enrollment in special education classes are not enough evidence to provide evidence of subaverage intellectual

7

functioning that onset before age 22. *See, e.g., Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (affirming ALJ's conclusion that claimant did not meet Listing 12.05 because claimant's reliance on records of attending special education classes and quitting school in eighth grade were insufficient to establish that she had significantly sub-average intellectual functioning before age twenty-two); *Hayes*, 357 F. App'x at 677 ("[t]his Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of sub-average intellectual functioning before age twenty-two."); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (finding claimant failed to demonstrate intellectual deficits before age twenty-two because "[t]he only evidence in the record pertaining to this issue is that Foster left school after completing ninth grade, but why Foster did not continue with her studies is unclear"). Although claimants are not required to produce an IQ score obtained before age 22, a claimant is required to make some showing that her deficiencies in adaptive functioning arose before that time, but Mr. Goins has offered no evidence at all to make this showing. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007).

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Mr. Goins does not meet Listing 12.05 is supported by substantial evidence. Mr. Goins did not meet his burden of demonstrating all specified medical criteria. *See Zebley*, 493 U.S. at 530; *Hayes*, 357 Fed. App'x at 675. "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

**B**

Next, Mr. Goins claims the ALJ erred by failing to give sufficient weight to Dr. Lima's opinion. As an initial matter, the Court recognizes that "neither this Court nor the ALJ 'may [ ] focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent

evidence.'" *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004) (quoting *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978)). In other words, an ALJ "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale" for the decision. *Id*. However, as has already been explained, s*upra* I.B., this Court is limited to deciding whether the Commissioner's decision, "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). "If the Commissioner's decision is based upon substantial evidence, we must affirm, even if substantial evidence exists in the record supporting a different conclusion." *Id*. "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009); see also *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). Thus, even if Mr. Goins is correct that substantial evidence also supports his conclusion, that would not justify granting his motion for summary judgment so long as substantial evidence of the record also supports the conclusion of the ALJ.

An individual's RFC is an administrative determination about the person's maximum ability to perform work-related activities and reflects the most that the person can do in a work-related setting despite his or her limitations. SSR 96-5p, 1996 WL 374183, at *5; 20 C.F.R. § 404.1545(a)(1). This assessment "is based upon consideration of all relevant evidence in the case record," including medical evidence as well as the individual's own statements of what he or she can do. SSR 96-5p, 1996 WL 374183, at *5; 20 C.F.R. § 404.1545(a)(3). Given the role of the Court at this stage in the process, the key issue is whether the ALJ's determination is

supported by substantial evidence. *See* 42 U.S.C. § 405(g). As noted above, this Court must give deference to the Commissioner's decision "[e]ven if this Court might have reached a contrary conclusion of fact . . . so long as [the decision] is supported by substantial evidence." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010); *Ulman*, 693 F.3d at 714.

The regulations require the ALJ to consider all relevant evidence in the record. 20 C.F.R. § 404.1527(b); § 416.927. Generally, more weight is given to opinions from a treating source than to those of the state agency examiners because the treating source is better able to provide a longitudinal picture of an individual's impairments. 20 C.F.R. §§ 404.1527(c)(2), 404.927(c)(2). In certain circumstances, however, opinions from state agency consultants are given significant weight or even greater weight, such as where the consultative opinion is based on a more complete case record with more detailed and comprehensive information than what was available to the individual's treating source, or where no sufficient treating source opinions are available. SSR 96-6P, 1996 WL 374180, *3 (S.S.A. July 2, 1996); *Smith v. Colvin*, 2016 WL 3746537, *3 (E.D. Ky. July 8, 2016). In general, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). Section (c)(4) of the same regulation makes clear that greater weight is assigned to opinions that are "more consistent . . . with the record as a whole." § 404.1527(c)(4). The ALJ should also consider factors such as the source's understanding of disability programs and their evidentiary requirements, as well as the extent to which the source is familiar with additional information in a claimant's case record. § 404.1527(c)(6). Thus, the ALJ may not ignore the opinions of state agency consultants and must explain the weight given to their opinions. SSR 96-6P, 1996 WL 374180, at *1; *see also* SSR

96–8p, 1996 WL 374184, *7. However, the ALJ must consider all other factors that could have a bearing on the weight given to the opinion, such as the consultant's specialization, and whether the opinion is consistent with the other evidence in the record. SSR 96-6P, 1996 WL 374180, at *2-3; § 404.1527(e)-(f).

Here, ALJ Isaacs considered the opinion of agency consultative examiner Dr. Lima, but chose to give "limited weight" to Dr. Lima's opinion "to the extent his findings show Mr. Goins has mild to moderate limitations secondary to any mental impairment." [Tr. 28.] In particular, ALJ Isaacs found the Dr. Lima's opinion that "Mr. Goins has significant limitations in persistence and pace inconsistent with his daily activities and prior work history, which shows the ability to complete the basic mental demands of work activity in a normal amount of time." *Id.* at 28–29. Mr. Goins was examined by Dr. Lima on July 19, 2014, where Dr. Lima acknowledged his prior diagnosis of Mild Mental Retardation in 2012[3] and assigned him a GAF of 51–60.[4] *Id.* at 498–99. Dr. Lima concluded:

> Results of the present evaluation indicate the patient is able to understand instructions and will not have difficulties recalling those instructions. He is not able to complete tasks in a normal amount of time but is likely to interact well with members of the public. His ability to manage stressors such as those typically found in the workplace is reduced.

*Id.* at 499. However, Dr. Lima also stated, "The results of the REY-15 strongly suggest the claimant is exaggerating his recent memory deficits." *Id.* at 498. Following that examination, Mr. Goins was examined by Dr. Brake on or around August 18, 2014, and Dr. Prout on or around September 11, 2014. *Id.* at 144–45, 176–77. Both Drs. Brake and Prout noted that Dr.

---

[3] Dr. Lima's diagnosis of Mild Mental Retardation was based on the examination performed by Jenifer Wilke-Deaton, M.A., on November 13, 2012, where Ms. Wilke-Deaton had diagnosed Mr. Goins with Mild Mental Retardation. [Tr. 498, 584–88.]

[4] A GAF score is based on a 100-point scale and represents a particular mental health professional's subjective opinion of the claimant's overall mental functioning. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).

11

Lima's opinion was "an overestimate of the severity of the individuals restrictions/limitations and based only on a snapshot of the individual's functioning." *Id.* at 145, 177. ALJ Isaacs discussed each of these opinions, including the opinion of the previous ALJ, who determined that his medical records did not "support the presence of sustained marked limitations." *Id.* at 123. While ALJ Isaacs found she was not bound by the prior determination, the current medical evidence "does not reasonably result in more than minimal change in the prior residual functional capacity limiting Mr. Goins to light exertional work, specific clarification of prior findings with revision of some postural, manipulative and environmental limitations, and change of mental restriction." *Id.* at 26–27.

Furthermore, Mr. Goins provided no medical evidence from a treating provider that indicated greater impairment or limitations than ALJ Isaacs found. *Id.* at 28. She did not rely on her own lay opinion, as Mr. Goins has suggested [*See* R. 15], but rather carefully considered the opinion of the previous ALJ, the determinations of the State agency medical consultant and State agency psychological consultants, as well as the opinion of Dr. Lima. [Tr. at 28.] Dr. Lima's opinion of Mr. Goins's limitations was simply inconsistent with other state agency consulting opinions, and with Mr. Goins's daily activities and prior work history concerning his limitations in persistence and pace, but not in Dr. Lima's determination of his mild to moderate limitations. *Id.* Thus, the ALJ did not ignore, discredit, or reject Dr. Lima's opinion. Instead, it appears ALJ Isaacs only gave lesser weight to the limitations that were inconsistent with other evidence, but still considered the parts of Dr. Lima's opinion that were supported by the record. As stated above, "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009); see also

*Her*, 203 F.3d at 389–90. Various experts examined Mr. Goins, not just Dr. Lima, and substantial evidence exists in the record to support ALJ Isaac's determination.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Randell Curtis Goins's Motion for Summary Judgment [R. 17] is **DENIED**, but the Commissioner's Motion for Summary Judgment [R. 20] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 21st day of December, 2017.

Gregory F. Van Tatenhove
United States District Judge